IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | | |
|---|---|---|
| Eddie Donnell Littlejohn, | ) | Civil Action No. 7:24-cv-1147-TMC-KFM |
| Plaintiff, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Brandon T. Parker and | ) | |
| Sadarius Henderson, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 64). The plaintiff, a former pretrial detainee,[1] filed this action *pro se* pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and submit findings and recommendations to the district court.

## I. FACTUAL ALLEGATIONS

On November 24, 2023, Cherokee County Sheriff's Office ("CSCO") Dep. Sardarius Henderson responded to the Peachtree Center in Gaffney where he met patient Augustine Littlejohn and her adult son James (doc. 64-2, pp. 1-2). The meeting was recorded on Dep. Henderson's body camera (doc. 64-3, Henderson body-cam). Ms. Littlejohn reported that her other son, Eddie (the plaintiff), was staying at her residence while she had been in the hospital and nursing home and that he had possession of her car

---

[1] The plaintiff was detained in the Cherokee County Detention Center when he filed this action. He has since filed a notice of change of address, indicating his release (doc. 72).

and refused to return the car keys to her.  She also said she was missing a check and raised concerns about the plaintiff having her debit card (doc. 64-2, Henderson aff. ¶ 6, 7). James showed Dep. Henderson text messages from the plaintiff in which he refused to return the car (doc. 64-3 at 17:13:11).  Ms. Littlejohn told Dep. Henderson that she wanted these items back and authorized James to use her house key to enter her house and retrieve her items, requesting that Dep. Henderson accompany James (doc. 64-2, Henderson aff. ¶ 8; doc. 64-3 at 17:18:45 - 17:19:50).

Dep. Henderson called for backup, as the plaintiff was known to him as a drug user (doc. 64-2, Henderson aff. ¶ 10). He and James then traveled to the residence, where he re-activated his body camera (doc. 64-4).  CSCO Deputy Brandon Parker responded as backup and activated his body camera (doc. 64-5).  The deputies, accompanied by James, went to the residence's carport door and knocked, announcing themselves as police.  The plaintiff answered through the door but refused to open it, asking why the officers were there.  Dep. Henderson told the plaintiff that his brother James was with them and that Ms. Littlejohn had given permission for him to come get her property.  When the plaintiff still refused to open the door, James used his key to open it and stepped back out of the way, allowing the deputies to speak with the plaintiff.  The deputies again explained to the plaintiff that Ms. Littlejohn had authorized James to take possession of her car (which was in the driveway), the keys, and her purse, but the plaintiff was argumentative and refused to turn them over, instead insisting on speaking with Ms. Littlejohn on the phone (docs. 64-4 at 17:35:25 - 17:38:46; doc. 64-5 at 17:35:25 - 17:38:46).  Dep. Henderson placed his foot in the doorway as the plaintiff stepped back into the house purportedly to call Ms. Littlejohn on the phone (*id.* at 17:38:40).  The deputies then heard shouting outside the house, and Dep. Parker walked around to the backyard, while Dep. Henderson remained at the carport door.  When the plaintiff failed to return to the door, Dep. Henderson entered, calling out for him.  When the plaintiff failed to respond, Dep. Henderson radioed Dep. Parker, who

confirmed that the plaintiff had exited the house and was in the backyard.  Dep. Henderson exited the house through the carport door and walked around the house to the backyard. There the plaintiff continued to argue with the deputies and James about having to turn over Ms. Littlejohn's property.  He claimed to have Power of Attorney for Ms. Littlejohn, but he could not produce it (*id.* at 17:38:50 - 17:44:00).  When the plaintiff continued to argue, Dep. Parker advised him that he would be arrested for larceny if he did not turn over the car keys (*id.* at 17:43:30). After approximately ten minutes of arguing, Dep. Henderson was able to contact Ms. Littlejohn by phone and have her confirm on speakerphone for the plaintiff that she wanted him to turn over her property to James (*id.* at 17:48:00 - 17:49:35). After more arguing, the plaintiff handed Dep. Henderson a set of car keys and went back into the house (*id.* at 17:50:00 - 17:51:10).  However, when Dep. Henderson tried to unlock the car, he discovered that the plaintiff had given him the wrong keys (*id.* at 17:51:20).

The deputies and James went back to the carport door, where James again unlocked it with his key, and Dep. Parker, followed by Dep. Henderson, entered the house (*id.* at 17:52:00).  Just inside the door, Dep. Parker encountered the plaintiff.  Dep. Parker grabbed the plaintiff's shirt as he pushed forward, causing the plaintiff to fall back onto the floor.  The plaintiff then arose to a sitting position, and with Dep. Parker's assistance, he stood up (*id.* at 17:52:20 - 17:53:30).  After calming down, the plaintiff agreed to retrieve Ms. Littlejohn's purse from a back bedroom, and he began walking down the hallway, with Dep. Parker following (*id.* at 17:55:40).  Dep. Parker then saw what he identified as methamphetamine on a cabinet in plain view.  He told the plaintiff he was under arrest for the drugs, handcuffed him, and walked him to a patrol car to be transported to jail (*id.* at 17:55:50 - 17:59:45).  As depicted in the body camera footage of the entire incident, the plaintiff continuously refused to turn over Ms. Littlejohn's property, but he did not voice his refusal of the deputies' warrantless entry onto the property.

3

Both deputies prepared a narrative in their CSCO Supporting Reports regarding the incident, and these were provided with the defendants' motion for summary judgment. Dep. Henderson wrote, "[Ms. Littlejohn] gave James permission to enter her home and for us to go with him" (doc. 64-6, p. 6). Dep. Parker wrote, "Sgt. Henderson stated that Ms. Littlejohn is the property owner and gave consent for deputies to enter her home and gave her son a key to the residence to allow deputies in" (*id.*, p. 5).

The plaintiff was subsequently indicted for possession of less than one gram of methamphetamine, second offense, and resisting arrest. He pled guilty to those charges on April 3, 2025. *See* Cherokee County Public Index, http://publicindex.sccourts.org/Cherokee/PublicIndex/PISearch.aspx (enter the plaintiff's name and 2023A1110200352, 2023A1110200353) (last visited June 9, 2025).

## II. PROCEDURAL BACKGROUND

The plaintiff filed his original complaint on March 6, 2024, following his arrest and pretrial detention for drug possession and resisting arrest (doc. 1). He filed an amended complaint on June 26, 2024, alleging illegal search and seizure by Dep. Henderson and Dep. Parker, the use of excessive force against him by Dep. Henderson and Dep. Parker, and supervisory claims against CSCO Sheriff Steve Mueller (doc. 38). On July 3, 2024, the undersigned issued a report and recommendation recommending that the claims against Sheriff Mueller be dismissed (doc. 42). The plaintiff filed objections to the report on July 22, 2024 (doc. 49). On May 23, 2025, the Honorable Timothy M. Cain, Chief United States District Judge, adopted the report (doc. 80).

The defendants filed an answer to the amended complaint on August 1, 2024, denying the claims made against them (doc. 50). On October 31, 2024, the defendants filed a motion to stay the case, noting the death of Dep. Parker (doc. 60). The motion was granted, and a ninety-day stay was entered until January 29, 2025 (doc. 61). That order further set out Federal Rule of Civil Procedure 25(a)(1), directing that a decedent must be

dismissed if a motion to substitute the decedent as a party is not made within ninety days after service of a statement noting the death (*id.*).

On January 31, 2025, the defendants moved for summary judgment, which is now before the court for consideration (doc. 64). In their motion, the defendants argue that the warrantless search was reasonable due to the deputies having Ms. Littlejohn's consent to enter onto the property, and their entry into the house was reasonable after they developed probable cause to arrest the plaintiff for larceny.  They also argue that their seizure of the plaintiff was supported by probable cause not only for larceny, but also for the drugs that were in plain view once the deputies entered the house.  Lastly, the defendants argue that they are entitled to qualified immunity.

On February 3, 2025, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately (doc. 65). On February 4, 2025, the stay was lifted by the court (doc. 67).  On February 14, 2025, the plaintiff filed a reply to the *Roseboro* order (captioned as a response to motion to dismiss) and his response to summary judgment (docs. 69, 70).  In these documents the plaintiff complains that the defendants failed to meet filing deadlines and, as such, he should be granted judgment in his favor. He also provides another version of the events that occurred during the incident, though not all are consistent with the video footage referenced above.  For example, the plaintiff says he told Dep. Parker, "You're not even suppose to be in the house" (doc. 70, p. 5), though the plaintiff is not seen or heard making any such statement at any time during the body camera video footage (docs. 64-3, -4, -5).

On May 6, 2025, the undersigned directed the parties to submit supplemental briefing on the plaintiff's excessive force claim against Dep. Parker, with the defendants' supplemental brief due by May 20, 2025, and the plaintiff's response due fourteen days after the defendant's supplemental brief is filed (doc. 74). On May 19, 2025, the defendants

5

filed their supplemental brief (doc. 78), making the plaintiff's response due by June 2, 2025.

The plaintiff did not file a response. Accordingly, the motion for summary judgment is now

ripe for review.

### III. APPLICABLE LAW AND ANALYSIS

#### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 states as to a party who has moved for

summary judgment: "The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is

deemed "material" if proof of its existence or nonexistence would affect the disposition of

the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

(1986). An issue of material fact is "genuine" if the evidence offered is such that a

reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether

a genuine issue has been raised, the court must construe all inferences and ambiguities

against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369

U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of

demonstrating to the district court that there is no genuine issue of material fact. *Celotex

Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold

demonstration, the non-moving party, to survive the motion for summary judgment, may not

rest on the allegations averred in his pleadings; rather, he must demonstrate that specific,

material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the

existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient

to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise,

conclusory allegations or denials, without more, are insufficient to preclude the granting of

the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## B. Dep. Parker

The plaintiff brought claims against Dep. Parker for illegal search and seizure and for the use of excessive force.  On October 31, 2024, the defendants filed a motion to stay the case, noting the death of Dep. Parker (doc. 60). The motion included a certificate of service, certifying that the motion had been served on the plaintiff by mail (doc. 60-3). The motion was granted, and a ninety-day stay was entered until January 29, 2025 (doc. 61).  In the order granting the motion, the undersigned recited the operation of Federal Rule of Civil Procedure 25(a)(1), directing that a decedent must be dismissed if a motion to substitute the decedent as a party is not made within ninety days after service of a statement noting the death (*id.*).  This order was entered and mailed to the plaintiff on October 31, 2024 (doc. 62). Neither party filed a motion to substitute within the ninety-day period. On May 6, 2025, the undersigned directed the parties to submit supplemental briefing on the plaintiff's excessive force claim against Dep. Parker, with the defendants' supplemental brief due by May 20, 2025, and the plaintiff's response due fourteen days after the defendant's supplemental brief is filed (doc. 74).  On May 19, 2025, the defendants filed their supplemental brief (doc. 78), making the plaintiff's response due by June 2, 2025. The plaintiff failed to file a response.

As counsel provided the court – and served the plaintiff – with a statement of Dep. Parker's death on October 31, 2024, and no motion for substitution of a proper party was made within ninety days thereafter, Rule 25(a)(1) requires that Dep. Parker be dismissed as a party and the claims made against him be extinguished.  As noted above, even after the ninety-day period, the undersigned provided the plaintiff an opportunity to file a supplemental response regarding Dep. Parker, but the plaintiff failed to do so. Accordingly, the undersigned recommends that Dep. Parker be dismissed as a defendant,

and the excessive force and illegal search and seizure claims against him be dismissed as well.

### C. Dep. Henderson

#### 1. Warrantless Entry

While the plaintiff alleges that Dep. Henderson conducted an illegal search, it is clear that he was not present to conduct a search, but rather to accompany James as he gathered Ms. Littlejohn's property as she requested.   Still, law enforcement officers generally need a warrant before entering a residence, and their entry without a warrant is presumptively unreasonable.  *See Payton v. New York,* 445 U.S. 573 (1980).  However, a warrantless entry may prove reasonable when valid, voluntary consent has been obtained, either from the individual whose property is searched or "from a third party who possesses common authority over the premises."  *See Armstrong v. Hutcheson*, 80 F.4th 508 (4th Cir. 2023) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)).  An objective standard is used to determine whether law enforcement officers reasonably believed that they had obtained valid consent to enter a residence.  *Id.* at 513 (citing *Rodriguez*, 497 U.S. at 189).  This determination of whether valid consent is obtained is to be made after considering the totality of the circumstances.  *Scheckloth v. Bustamonte,* 412 U.S. 218 (1973).

The undersigned finds that Dep. Henderson reasonably believed the he had valid consent to enter the residence and did not require a warrant.  The record reveals that the owner of the residence, Ms. Littlejohn – in Dep. Henderson's presence – provided her house key to James and gave him permission to go there and retrieve her property accompanied by Dep. Henderson.  While she confirmed that the plaintiff was allowed to live there while she was convalescing, Ms. Littlejohn maintained the key to the residence and primary authority and control over it.  After arriving at the residence, Dep. Henderson accompanied James to the carport door, which James unlocked twice during the incident using his mother's key when the plaintiff failed to open it.  The plaintiff did not challenge the

deputies opening the door, but instead requested that he be allowed to call Ms. Littlejohn. Moreover, throughout the incident, the plaintiff never contested Ms. Littlejohn's ownership or primary control over the property (nor has he done so in his filings here).  Further, the plaintiff did not refuse entry or demand the deputies leave the property; instead he only argued about having to relinquish his mother's items.  As argued by Dep. Henderson, given this conduct by the plaintiff, Dep. Henderson reasonably believed he had implicit consent from the plaintiff to enter the property as well.  Accordingly, his warrantless entry based on valid consent was reasonable, and the plaintiff's Fourth Amendment rights were not violated.

### 2. Seizure

The plaintiff also alleges that he was illegally seized.  "A [Fourth Amendment] seizure of the person... occurs when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. *Kaupp v. Texas,* 538 U.S. 626, 629 (2003). Whether a seizure violates the Fourth Amendment turns on whether it is conducted in an objectively reasonable manner. *Scott v. Harris*, 550 U.S. 372 (2007). In determining whether a particular seizure is reasonable, courts "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983).

Dep. Parker seized the plaintiff when he placed him under arrest.  However, as noted above, with Dep. Parker's death, the claims against him should be dismissed pursuant to Rule 25(a)(1).  To the extent the plaintiff claims that Dep. Henderson likewise seized him, the claim fails.  As set out above, Dep. Henderson had valid consent from Ms. Littlejohn to enter the residence, and the evidence here demonstrates that the plaintiff could not reasonably consider himself seized until Dep. Parker arrested him for drug possession.

The video footage shows that the plaintiff was able to walk away from Dep. Henderson, initially at the carport door and later in the backyard. When Dep. Henderson entered the house just prior to the plaintiff's arrest, the plaintiff agreed to retrieve Ms. Littlejohn's purse and again walked away from Dep. Henderson. Only when he was placed in handcuffs was the plaintiff's movement limited to constitute a seizure here. Moreover, Dep. Parker obviously obtained probable cause to arrest the plaintiff when he saw the methamphetamine in plain view. Accordingly, summary judgment should be granted to Dep. Henderson on the plaintiff's unlawful seizure claim.

### 3. Excessive Force

In his amended complaint, the plaintiff alleges that he was pushed over a table to be handcuffed during the incident at issue here (doc. 38, p. 6). To the extent that the plaintiff alleges a claim for excessive force against Dep. Henderson as well as Dep. Parker, the undisputed video evidence submitted by the defendants shows that Dep. Henderson did not touch or otherwise use any force against the plaintiff in connection with the plaintiff's fall over the table onto the floor. Accordingly, summary judgment should be granted to Dep. Henderson on this claim.

### 4. Qualified Immunity

Dep. Henderson argues that he is entitled to qualified immunity from the plaintiff's claims against him. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, a district court must decide (1) whether any right was violated, and (2) whether that right was "clearly established" at the time of the alleged violation. *Somers v. Devine*, No. 24-1511, 2025 WL 889762, at *4 (4th Cir. Mar. 24, 2025). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion

10

in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The United States Court of Appeals for the Fourth Circuit employs a split burden of proof for the qualified immunity defense. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). "The plaintiff bears the burden of proving the first prong, and the officer bears the burden on the second prong." *Id.* (citing *Henry v. Purnell*, 501 F.3d 374, 377-78 & n.4 (4th Cir. 2007)). "If the answer to *either* is 'no,' qualified immunity bars the claim." *Gelin v. Maryland*, No. 23-1541, 2025 WL 911197, at *9 (4th Cir. Mar. 26, 2025) (emphasis added).

As addressed above, Dep. Henderson did not violate the plaintiff's Fourth Amendment rights.  His warrantless entry into the residence was objectively reasonable, the plaintiff's seizure was supported by probable cause, and there is no evidence that he used excessive force against the plaintiff.  As the plaintiff cannot satisfy the first prong of the qualified immunity analysis, Dep. Henderson is entitled to qualified immunity.

### D. Timeliness

In his reply to the *Roseboro* order and his response to the motion for summary judgment (docs. 69, 70), the plaintiff argues that he is entitled to judgment in his favor as the defendants failed to comply with this court's order entered on July 3, 2024, setting a forty-five-day deadline for filing dispositive motions after the answer was filed (doc. 41).  On October 1, 2024, the defendants filed a motion out of time to extend the deadline for filing dispositive motions, and the undersigned granted the motion, extending the deadline to October 31, 2024 (doc. 56).  The defendants thereafter timely filed their motion for summary judgment on October 31, 2024 (doc. 64).  Accordingly, the plaintiff is not entitled to judgment for untimeliness.

## IV. CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the undersigned recommends that the district court grant the defendants' motion for summary judgment (doc. 64).

IT IS SO RECOMMENDED.


June 18, 2025                                                    s/Kevin F. McDonald
Greenville, South Carolina                          United States Magistrate Judge


***The attention of the parties is directed to the important notice on the following page.***

### Notice of Right to File Objections to Report and Recommendation

        The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

        Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

        **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).